ROBERTS, J.,
for the Court.
SUMMARY OF THE CASE
¶ 1. On February 23, 2005, Jeff Stewart was convicted in the Lee County Circuit Court of conspiracy to manufacture methamphetamine and sentenced to serve twenty years, with twelve years suspended, in the Mississippi Department of Corrections. Aggrieved, Stewart appeals and asserts two errors: (1) the circuit erred in prohibiting him from calling witnesses to testify that the co-conspirator signed a document recanting his statement to law enforcement personnel, and (2) the circuit court erred in denying his motions for a directed verdict and judgment notwithstanding the verdict. Finding that Stewart failed to preserve the first issue for appellate review, and that the verdict was neither against the weight nor sufficiency of the evidence, we affirm.
FACTS
¶ 2. On September 4, 2003, Officer John Moses, a narcotics officer with the Tupelo Police Department, received a telephone call from a confidential informant. That confidential informant advised Officer Moses that a man, later identified as Adam Johnson, purchased a large number of lithium batteries at a Wal-Mart. Agent Moses and another police officer located the suspect in the Wal-Mart parking lot, followed him, and ultimately stopped him. Although Johnson denied doing anything illegal, the officers noticed Red Devil Lye and dry ice in his vehicle. After further questioning, Johnson said Jeff Stewart loaned him the vehicle and asked him to pick up the lithium batteries, Red Devil Lye and dry ice so they could manufacture methamphetamine.
*948 ¶ 3. From Johnson, Agent Moses obtained a receipt for the lithium batteries. That receipt showed that Johnson paid for the lithium batteries with Stewart’s debit card. Agent Moses confronted Stewart with Johnson’s allegations. Stewart admitted he ordered the lithium batteries, but he said they were for his remote control. Stewart further admitted to Agent Moses that he ordered the dry ice, but intended to use it for a camping trip. Additionally, Agent Moses testified that in a subsequent interview, Stewart admitted that he intended to use the dry ice to manufacture methamphetamine. However, that statement was neither recorded nor reduced to writing.
ANALYSIS
I. Did the circuit court err when it denied admission of the document in which Johnson purportedly recanted his previous statement?
¶ 4. At trial Johnson testified that Stewart asked him to take his vehicle and pick up the precursors for the purpose of manufacturing methamphetamine. On cross-examination, Stewart’s counsel confronted Johnson with a document. It contained what Stewart purported to be Johnson’s signature. That document contained a written statement that Johnson bought the lithium batteries for his camera, the Red Devil Lye for work, and the dry ice for camping. Additionally, the document stated that Stewart did not know what methamphetamine was, and that he had no plan to manufacture it. The document also contained two additional purported signatures: Jeff Stewart’s, who may or may not have been the same person as the appellant, and Helen Stewart’s, who is otherwise unidentified in the record. All signatures are dated August 8, 2004, which was nearly a year after Johnson’s initial statement to Officer Moses on September 4, 2003.
¶ 5. During cross-examination, counsel for Gilbert, William Bristow, asked Johnson, “[w]ell, since we’ve been talking about lies throughout your testimony, do you know of any reason why if these folks [Jeff and Helen Stewart] come to testify that they saw you sign that document, do you know why they would be making that lie?” Johnson replied, “No, sir.” That exchange concluded Johnson’s cross-examination. The State rested, and the jury was escorted from the courtroom. Stewart’s counsel then moved for a directed verdict, which the circuit court denied. Stewart’s counsel then made the following proffer:
This will be in the form of a proffer as well. But during the break, I spoke with Mr. Farris [the prosecutor] about the testimony we heard from Mr. Adam Johnson and specifically his answer to my questioning about whether or not he signed a statement in August of 2004.
For purposes of the record, that 'statement, in effect, is a recanting of the written statement signed by Mr. Johnson at Agent Moses’ office on September 4th, 2003. I understand this is a collateral attack on the witness, but I wanted to ask for the court’s ruling so that it will help me decide on my order of witnesses, if any, in the case in our case in chief.
Mr. Farris replied:
Ma’am, the State would object to such testimony because it is, in fact, a collateral attack on a witness. He had the witness on the stand subject to cross-examination. The witness gave him the answer. He did not like the answer, but he went as far as he felt like he should go, and anything further would be a collateral attack.
*949 The circuit court allowed the document to be introduced for identification only, and ruled:
I believe it [the document] would be a collateral attack on a witness, and Mr. Bristow, I don’t know of any way under the rules or procedure that you could go about doing that. I think if I allowed it, it would be inappropriate. I’m not going to allow you collaterally attack that witness. You are bound by the answer the witness gave you on cross-examination.
Mr. Bristow then stated, ‘Yes, ma’am. And with that ruling, I will advise the Court that when the jury returns we will announce that we do rest.”
¶ 6. On appeal, Stewart argues that testimony concerning whether or not Johnson signed the document in which he recanted his statement and directly contradicted his sworn testimony was not a collateral attack. We agree.
¶ 7. Mississippi Rule of Evidence 611(b) provides, “[c]ross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.” Trial courts have discretion in determining if a question is' so far afield'from the facts of the case to be irrelevant. Hosford v. State, 560 So.2d 163, 165 (Miss.1990). However, where evidence of a collateral fact goes directly to whether a witness testified truthfully, that evidence is admissible and a circuit' court that denies its admission abuses its discretion. E.g., Clark v. State, 514 So.2d 1221, 1223-24 (Miss.1987). Furthermore, according to Mississippi Rule of Evidence 613(b), when a party seeks to introduce extrinsic evidence of a prior inconsistent statement, the witness must be shown the evidence and be given an opportunity to explain or deny that the evidence is what it is purported to be. In this case, Johnson had that opportunity.
¶ 8. However, Stewart did not directly attempt to call either Jeff or Helen Stewart. A fair reading of the record could indicate that having incorrectly found the document was “collateral,” the circuit court would undoubtedly have found sponsoring testimony inadmissible. However, Stewart failed to proffer what would have been the testimony of one or both of the witnesses. Mississippi Rule of Evidence 103(a)(2) requires an offer of proof of the substance of the evidence. The question Stewart seeks to raise on appeal is whether the circuit court erred in not allowing the jury to hear what Jeff and/or Helen Stewart had to say concerning whether Johnson signed the document. Nothing in the record indicates what Jeff or Helen Stewart’s testimony would have been. What Stewart sought to proffer was the document itself, rather than what the testimony would be.[1] The need for a proffer is not merely academic. Assuming one or both of the witnesses would have agreed to testify, either they or Johnson would have been committing perjury. This Court cannot assume something outside of *950 the record. See e.g. Brown, v. State, 338 So.2d 1008, 1010 (Miss.1976); Knight v. State, 360 So.2d 674, 678 (Miss.1978). Therefore, there is no basis on which to find that the circuit court had an opportunity to determine whether Jeff or Helen Stewart would have been prepared to swear under oath that Johnson signed the document. As such, we find that the issue was not preserved for appellate review.
II. Was the evidence sufficient to convict Stewart and was the jury verdict against the overwhelming weight of the evidence?
¶ 9. A motion for a JNOV, and a request for a peremptory instruction challenge the legal sufficiency of the evidence. Jefferson v. State, 818 So.2d 1099, 1110— 11(¶ 30) (Miss.2002). Appellate review is limited to whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed, and where the evidence fails to meet this test it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843(¶16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). After viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient if any rational trier of fact could have found the defendant committed each element of the crime beyond a reasonable doubt. Id. Here, even assuming that the Jeff and/or Helen Stewart had testified, the jury was still left with Agent Moses’ testimony that there both was a receipt showing Stewart had purchased the lithium batteries with his debit card, and that Stewart admitted to ordering the dry ice. Moreover, Agent Moses also testified to a subsequent, though unrecorded, statement by Stewart in which he admitted that the dry ice was intended to be used to manufacture methamphetamine.
¶ 10. As for the weight of the evidence, “[a] motion for a new trial seeks to vacate the judgment on grounds related to the weight, not sufficiency, of the evidence.” Verner v. State, 812 So.2d 1147(¶ 6) (Miss.Ct.App.2002). “A motion for a new trial is addressed to the trial court’s sound discretion.” Fleming v. State, 732 So.2d 172(¶ 37) (Miss.1999). We may only reverse the circuit court’s decision when we are convinced that the circuit court abused its discretion when it overruled Stewart’s motion for a new trial. Smith v. State, 868 So.2d 1048(¶ 11) (Miss.Ct.App.2004).
¶ 11. “Matters regarding the credibility and weight to be accorded 'the evidence are to be- resolved by the jury.” Vemer, 812 So.2d at (¶ 7). “Where there is conflicting testimony, the jury is the judge of the credibility df the witnesses.” Bessent v. State, 808 So.2d 979(¶21) (Miss.Ct.App.2001). Even the testimony of' a single uncorroborated witness can sustain a conviction even though there may be more than one witness testifying to the contrary. Verner, 812 So.2d at (¶ 7).
¶ 12. Accordingly, “[t]his Court does not have the task of re-weighing the facts in each case to, in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Smith v. State, 868 So.2d at (¶ 11). Rather, “this Court must consider all the evidence, not just that supporting the case for the prosecution, in the light most consistent with the verdict, and give the State all favorable inferences which may be drawn from that evidence.” Fleming, 732 So.2d at (¶ 38).
¶ 13. Here, even assuming that the Jeff and/or Helen Stewart had testified, the jury was still left with Agent Moses’ testimony that there both was a receipt showing Stewart had purchased the lithium bat *951 teries with his debit card, and that Stewart admitted to ordering the dry ice. Moreover, Agent Moses also testified to a subsequent, though unrecorded, statement by Stewart in which he admitted that the dry ice was intended to be used to manufacture methamphetamine.
¶ 14. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF CONSPIRACY TO MANUFACTURE METHAMPHETAMINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TWELVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. The circuit court's decision to not allow the document itself into evidence was not error. Mississippi Rule of Evidence 901 provides, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” Calling a witness with first hand knowledge of a document is one such means of introducing the document. M.R.E. 901(b)(1). While it is not necessary that the sponsoring witness be the author of the document, it is necessary that the witness have first hand knowledge that the document is that which it is purported to be. Kearley v. State, 843 So.2d 66(¶ 19) (Miss.Ct.App.2002). In this case, Johnson denied taking part in making it, and no witness with first hand knowledge was called.